And so I'll call the first case, United States v. Dominguez-Perez, case number 18-2063. Your honors, may it please the court, my respected opposing counsel, my name is Marshall Ray, and I represent the defendant, Ray Alejandro Dominguez-Perez. And the reason for this appeal and what we're asking for is a remand for resentencing because, and I think the government agrees with a part of this, there were enhancements added to the final guideline calculation, in other words, to the total offense level that the record did not support. The place where the government and the defense agree is that with respect to obstruction of justice, I believe the government's position is that because the district court did not make findings to support the obstruction of justice enhancement, that the case needs to be remanded for resentencing. And the defense position is not too far off from that. Our position is that we agree that the district court, the sentencing judge, did not make findings to support obstruction of justice because he essentially, well, he didn't essentially, he looked at what he had in front of him, which was a suppression motion was argued before he was assigned to the case. There was a factual dispute about the placement of a garbage can, and there was a set of witnesses for the government that said it was here. There was a set of witnesses for the defense that said it was there. The judge decided to, and especially in light of the standards that were governing that motion to suppress, she decided to credit the government testimony. Judge Parker, who was the later assigned in the sentencing judge, he looked at that and he said, that's right, Judge Armijo believed these government witnesses, therefore, I'm finding obstruction of justice. My position is, therefore, not only did Judge Parker not make appropriate findings to support some kind of a perjury or action other than just conflicting testimony, but that the record doesn't even contain it. And so at least with respect to obstruction of justice, there needs to be a remand. It's not a harmless error. Talking about what the Supreme Court discussed in Rosales Mireles, which is a recent case, I believe it was from 2018, when you have a guideline calculation that is incorrect, it presumptively needs to be remedied. That would make the fifth issue on the sentence also sort of move, wouldn't it? Your Honor, that's correct. And you mean substantive reasonableness. We don't need to address that, do we? I don't think the court needs to discuss substantive reasonableness. Okay, why don't you get on to your points you haven't conceded. Okay, so moving on to the points we haven't conceded since I think what we're really talking about, in my opinion, is the scope of the mandate. First of all, the government, in my view, well, the government has argued a lack of preservation on two of the enhancements. The first one is the possession of firearm enhancement, which is 2D1.1B1. And I concede that this is the government's best argument for a failure to preserve. What the record shows, and to be quite frank with the court, I cited in my brief the best I could locate in the trial court record as to what trial counsel did to preserve that issue. That's the motion for the downward deviation. The downward deviation, as he calls it. And I know that that is not the language of federal sentencing. And I pointed out that there were issues with the experience level of that trial counsel. But he kept calling these requests for removal of the enhancements, requests for downward deviations. The court probably saw in the sentencing hearing that he was telling the court that the guidelines are mandatory. So whatever the inartfulness there. Can I interrupt? Yes, Your Honor. I guess my concern about that argument is that even if we were to assume that despite its caption and some of the substance that you were making, some objection to the firearm enhancement, it seemed to me you aren't making, or he didn't make in that particular motion, the actual objection you're making here, which is the lack of a nexus between the firearm that was found and the drug trafficking. That seems to be the nature of your objection here. I didn't see that at all in that motion. And, Your Honor, to be perfectly frank with you, he doesn't make the specific objection about the nexus. His only articulation of the objection was that he wanted the deviation because of the suppression of the evidence. But without that factual objection, we don't have any ruling from the trial court that would allow us to review in terms of the fact findings. So why isn't that right? Well, Your Honor, I believe that going back to this reasonableness standard, the objection needs to be raised so that the trial court has a reasonable opportunity to deal with it. And if you look at the sentencing… And that we'll have an opportunity to have a record to review. Yes, Your Honor. If you look at the sentencing memorandum that defense counsel filed and then you look at the colloquy that occurred at the sentencing hearing, you'll see that when this objection about the firearm enhancement was raised, albeit without the specific reference to the factual nexus, the government was clear about what he was trying to do. So he made robust arguments about the factual nexus. And at the trial – at the sentencing hearing, there was a pretty good colloquy about the placement of the firearms. There was a discussion about them being in the common area. And the district court judge, he decided that because of what was in the PSR and because they were in a common area of the house that he was going to go ahead and add the enhancement. And so that's why I take the position that everybody reasonably understood that there was an objection to that enhancement, even if the trial counsel wasn't wording it exactly like he should have. All parties – all parties understood it. The court understood what was happening and it had a colloquy about that issue. And the government's counsel also engaged in extensive litigation of that issue. So there is a record for this court to look at and say, did the trial court have a record before it's sufficiently considered? But I do understand, Your Honor, that there are some issues there with preservation on that one. As for the other one, the government also argues a lack of preservation with respect to – colloquially, sometimes we call it the drug house enhancement. It's maintaining the premises for the purposes of manufacturing or distributing narcotics, and it was for two points. Your Honors, I think the government's preservation argument on that one is quite a bit weaker because the sentencing memorandum actually specifically argues that the house was primarily used as a residence. Does that make any difference? You've got drugs scattered throughout the house, in the attic, in the garage, just all over the place. So does it make any difference that it's a residence given our Murphy decision? Yes, Your Honor. And to clarify, I am not arguing that it being a residence immunizes it from this enhancement. But even citing the Murphy decision, which we discuss in our brief, it still has to be a primary use for it. And what isn't in the record here – What isn't in the record? – is any reference to any drug transactions happening in the house. Mr. Dominguez-Perez? Do you have any authority that you actually need a drug transaction taking place in the house? Yes, Your Honor. Suppose if they make 100 tons of methamphetamine in the house and sell it across the street. That has nothing to do with the house? Well, Your Honor, it's a factor, is what I'm saying. A factor. No transactions were seen in the house is something that's cited by this court and other courts as a factor. It's not dispositive. The totality of the circumstances often prevails. It kind of governs these outcomes. What I'm saying, Your Honor, is that you've got drugs and things to the house. What it looks like is this was being used as a stash house. There was some equipment, it looked like, in some of the photographs that was used to hide drugs in the wealthy vehicles. Well, there was kilos of marijuana found in the garage, methamphetamine, heroin processing in the attic. Yes, Your Honor. I agree with that. It was almost like a pharmacy. Yes, Your Honor. There were some things scattered throughout the house. I raise these issues and I make a good faith argument, Your Honor, to preserve these for my client. I do feel that Murphy does articulate the appropriate standards to evaluate this enhancement. And I just present this to the court for consideration based on the facts found, whether that was a primary use of the house or not. And I'm not sure if the court even needs to reach it. Yes, Your Honor. You mentioned early on that there was a government argument on waiver again, and there is on this issue. And I want to clarify whether your argument on this issue is about the lack of facts. Are the facts in PSR simply not sufficient? Is that your objection? Or are you arguing that there need to be fact findings? And, again, wasn't that waived as a procedural argument? Your Honor, I'm arguing that the facts in the PSR weren't sufficient for the findings. You're not objecting to those facts such as they are? No, Your Honor. I mean, Your Honor, that would bring us under a plain error review. And I didn't see that you argued plainly. Yes, Your Honor. Okay. So, yes, that's a good question. Would the court permit me to preserve the last four minutes of my time for a brief rebuttal? Certainly. Thank you. May it please the Court, my name is Paul Schott, and I'm representing the United States. I wanted to briefly address the interpretation of the trial court's supposed objection to the enhancements on the firearms enhancement and the ---- Well, before you go there, do you concede his points one and two? So we concede that a remand is necessary for findings on the willfulness and materiality of the defendant's false statements. We believe that the record supports those findings, but they simply were not made, and that is required. So we agree that a remand is necessary on that issue, and then the associated acceptance of responsibility issue. The phrasing of trial counsel's sentencing memo has come up. He uses this phrase deviation, and he uses it with regards to both the firearms enhancement and the premises enhancement. I think a reasonable interpretation of this is that he was not actually challenging the application of those enhancements. What he was doing was asking for a variation, a variance rather, to counteract those two enhancements. He does not use the deviation language when he actually challenges the obstruction enhancement, and so I think the difference there is notable. I would also note that at the sentencing hearing when the district court was discussing variances, defense counsel again used this word deviation. So I think from the defense's own sentencing memo and statements at the sentencing hearing, it's clear that those challenges should be waived. Is this a court-appointed attorney? I do not believe so. I'm sorry, Your Honor, I don't have that in front of me, and I'm not positive. I would also note that the fact that the United States briefed the application of the enhancements in its own sentencing memo is of no moment here. The United States often briefs issues that defendants do not waive, and that's a generally helpful practice that should not be discouraged or disincentivized, and so I think it's really more appropriate for the court to look to the defendant's own briefing and argument at the sentencing hearing on that point. I would also note that the colloquy in the sentencing hearing about the guns was not on this issue of the spatial and temporal relationship between the guns and the drugs, but was rather more generally about potential ownership of the drugs and part of a larger discussion of the co-defendant in this case and that person's relationship to the evidence found in the home. I want to touch briefly on this issue of waiver and why it is appropriate here. In this case, there is no standard that can save the defendant as to these enhancements, because despite the fact that he did not raise these objections below, the court still found facts sufficient as a matter of law to support the enhancements. But there will be other cases where the fact that a defendant does not object and prevents the district court from further developing the factual record will result in a court not finding facts sufficient as a matter of law. The defendant will then, in that instance, win on plain error review in this court, and then on remand, it is very possible and indeed likely that the court will then easily find facts sufficient. So the result will be the same, but it is a colossal... We're saying precedent for other cases. Is that your argument? Yes, Judge, and for reasons of judicial economy... Well, you think we should give it a de novo review regardless of whether it's preserved, assuming that we can glean from the record that there's not a sufficient showing made? No, quite the opposite, Judge. I'm arguing that waiver is instead appropriate in this circuit. Doesn't that open the door to an ineffective assistance claim? So aren't we down the road then again? Your Honor, sorry, I believe I've diverted us a little bit into the hypothetical. But in this case, I don't think an ineffective assistance of counsel claim would be effective despite the waiver issues below. And generally, I think the logic of Templeton is helpful to preserve judicial economy in situations like this and to prevent defendants from remaining silent at the district court and then making a ruckus on appeal and getting plain error review, despite the fact that the defendant's failure to object is what prevented the district court from further developing the necessary factual findings there. So despite the fact that I believe the United States believes waiver is appropriate here as to both enhancements, under any standard of review, both enhancements are wholly proper and there's no error of any kind. As discussed in Hall, all that is necessary for the government to show is a temporal and spatial relationship between the guns, the drugs, and the defendant. As Judge Kelly mentioned, the drugs were found throughout the house, in the bedroom, the kitchen, with a large storage operation in the garage and manufacturing operation in the attic. And the fact that the guns were found in the laundry room at the same time in the defendant's house should lead to an obvious conclusion that there was a spatial and temporal relationship between the guns, the drugs, and the defendants. Well, they were in a separate box, weren't they? Weren't they in a box sort of wrapped up? The guns were in a box in the laundry room, but their mere presence at the same location of the drugs is all that's sufficient here. In Hall, the guns were not even in the same house as the drugs. Well, suppose the fellow was a hunter and had a gun rack in his living room with rifles and pistols in it. Would that suffice also in your opinion? I believe the court would need a few more facts to determine in that instance. But the proper way to handle this, of course, is that once the government has met its burden to show that there is this temporal and spatial relationship, the burden then shifts to the defendant to show that it is clearly improbable that the guns were used in conjunction with drug trafficking. Potentially, weapons that were clearly used in a hunting context would not qualify. But it's hard to say without further facts on that point, which I think does bring us back to the central issue here and the way the court can dispatch this challenge is that if there were additional facts that might have led to a conclusion that it was clearly improbable that the guns in this instance were used in conjunction with drug trafficking, then the defendant should have made that objection and the district court could have readily addressed it. As for the premises enhancement, again, as the court has mentioned, Murphy makes clear that there is no exception to the premises enhancement when the premises in question is also the defendant's home. And, of course, the mention in his sentencing memo that the house was primarily a residence is the defendant's only gesture at raising any issues with this enhancement at all. And, of course, under Murphy, it does not save him from the enhancement. The nature of the drug storage in the house makes clear that this was indeed a stash house under the normal application of the enhancement. The idea that there have to be transactions located at a house in order for it to qualify is bellied by both the case law and the language of the enhancement itself, which mentions that in commentary note 17 that storage of a controlled substance for purposes of distribution qualifies under the enhancement. There is no other way to interpret the facts in the record here other than storing drugs for the purposes of distribution. It was a large quantity of drugs. They were apparently at one time concealed within tires, and the aforementioned operation in the attic made clear that this house was being used to store and process and package drugs for distribution. So this enhancement would clearly apply even if we only had this one moment in time when the search warrant was executed based on the level of sophistication and the quantity of drugs that we're dealing with. But that is not actually all we have in this record. Two weeks prior to the trash pull that led to the search of the house, methamphetamine and drug paraphernalia was found in the trash, and so there's evidence that this was not a situation where the defendant accidentally left some drugs in the house somewhere. This was clearly an ongoing and longstanding drug storage and manufacturing operation on the premises. Returning to the gun enhancement very briefly, I wanted to note that, because it is raised in Mr. Dominguez-Perez's reply after being addressed in the government's response, that there is absolutely no requirement in Hall or elsewhere for the guns to be, quote, oiled, cleaned, and spotless. Hall was in an opinion where the court was dealing with a variety of issues, including evidentiary issues and, in particular, tools of the trade evidence. And it is in that section of the opinion where the court goes into the cleanliness, essentially, of the firearm, the area of that opinion where the court deals with enhancement 2D1.1b1 is in a separate sentencing part of the appeal, and there is no reading of Hall where this requirement that a gun be oiled or even in good working condition is supported. It's also bellied by the enhancements, by the guidelines themselves, which define a firearm as an object that will or is designed to expel a projectile. So there is no reason to be overly concerned with the state of the guns in this instance, and the facts would certainly be sufficient to support both enhancements, even if this court sees daylight between Templeton and this case. And the premises enhancement is subject, if not to waiver, then to plain error review. And there is, as I've mentioned, clearly no error here, and certainly not plain error. I see that my time is running down unless the court has any further questions. Thank you. Thank you. Did you have a comment? Your Honor, it's very briefly, and thank you for your presentation, and thank you for convening this. I want to address a couple of points. First of all, going back to Murphy, which has been discussed quite a bit, again, it's not that there had to have been drug transactions to qualify, because it's the totality of the circumstances. And this court stated in Murphy that it considers the frequency and number of drug sales occurring at the home, the quantities of drugs bought, sold, manufactured, or stored, whether drug proceeds, employees, customers, and tools of the trade are present, and the significance of the premises to the drug venture. And what I would just reiterate to the court is this record, you have to make a lot of assumptions from it to say that this was a primary purpose of this residence, especially given that this individual was under surveillance. Counsel referenced that two weeks before there was another trash pull that brought out methamphetamine. I think we need to go back and look at the record on that. In the appellate appendix, page 25, which is part of the PSR, sorry, the supplemental appendix, there's a discussion of, I think, what counsel is talking about. Dominguez Perez had a different residence at the time of that trash pull, and so that discovery of methamphetamine at that other residence does not relate to this and whether this place where Ms. Tercero and he had moved in together was, whether that residence was the primary location of the activity for maintaining a premises. So that's just, I think, we have a factual, about how we're reading the record there. That takes me back to, you didn't object. Well, but Your Honor, the record actually says that. You can tell from the record. It's just he and I interpreting it differently, and I talk about it in my brief as well. It's in the brief. So I don't think there's a waiver of that argument. Now, as for, I thought I understood the government to be arguing, perhaps, that what's going to happen on remand is that all these enhancements are going to apply anyway and that the record's going to support them, and that sounds to me like a harmless error type argument, which Rosales Mireles from the Supreme Court forecloses. If we have an error in the calculation of the offense level, then we presumptively have to remand it. And, Your Honors, finally, with respect to the firearm, again, the point of referencing Hall and this notion that the gun is operable is because here, assuming this court can get past the waiver issue, if there's not even a record that there is an operable firearm in the house, I get the point that Judge Kelly is making that is this Pappy's old wall hanger rifle or a hunting rifle or something like that, but what we have here is just a reference to boxed-up guns in a laundry area. Whose guns are those? Are they Ms. Tercero's? Are they his? Are they common property? Just because they're in the common area of the house. That's why I'm saying, again, we're always looking at the totality of the factors with respect to these enhancements. And if Your Honors don't have any more questions for me, I appreciate you, again, convening this panel, and I request that this matter be remanded for resentencing. Let me ask just one question. You have 13 seconds left. Whose obligation is it to develop the defenses that could have been developed? Is it our obligation? Your Honor, it's not this court's obligation to develop the defenses. What I'm arguing is that the defense counsel presented a reasonable record for the trial court to rule on, and on that basis the court can address these issues as an appellate body. Thank you. Thank you, counsel. Thank you both. We appreciate your arguments very much and have been helpful. The case will be submitted and counsel is excused.